RANDY S. GROSSMAN
United States Attorney
ALLISON B. MURRAY
California Bar No. 328814
Special Assistant U.S. Attorney
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9711
Email: Allison.Murray@usdoj.gov

Attorneys for the United States

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SIXTO ISIDRO CORTES SINISTERRA (3),<br><br>Defendant. | Case No.: 21-cr-3429-BAS<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:  September 12, 2022<br>Time: 9:00 a.m.<br>Honorable Cynthia Bashant |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Allison B. Murray, Special Assistant United States Attorney, hereby files its Sentencing Memorandum as to Defendant 3, Sixto Isidro CORTES SINESTERRA.  This memorandum is based upon the files and records of the case.

## I.    INTRODUCTION

Christian Nelson FLORES BOHORQUEZ ("FLORES BOHORQUEZ"), Victor MEDRANA ("MEDRANA"), and Sixto Isidro CORTES SINISTERRA ("CORTES SINISTERRA"), (Defendants), are before the Court for sentencing after pleading guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel in violation of 46 U.S.C. § 70503 and 18 U.S.C. § 2, and Operation of a Semi-Submersible Vessel without

Nationality in violation of 18 U.S.C. §§ 2285 and 2. A substantial sentence is warranted here.

Maritime cocaine smuggling is complicated. The skill necessary to transport cocaine on the high seas, on a low profile or semi-submersible vessel, takes skill and experience. Engaging in a journey that takes days, sometimes weeks, and requires navigating hundreds of miles on the open ocean demands extensive preparation. It also requires tremendous determination to entrust one's life to the dangers of mother nature, and the pernicious conditions that only skilled mariners know well. Defendant relied on his skill and acumen during this extended journey to try and achieve a significant reward – a lucrative payday. After taking into consideration the seriousness of the offense, including the level of skill and preparation required to transport approximately 3,000 kilograms of cocaine on a semi-submersible vessel, and the remaining 3553(a) factors, the United States recommends a sentence of 120 months custody, concurrent, followed by 5 years of supervised release, no fine, and a $200 special assessment.

## II.     STATEMENT OF FACTS

### A.     The Crime

On December 5, 2021, a Maritime Patrol Aircraft (MPA) detected a semi-submersible vessel with four outboard engines approximately 83 nautical miles northwest



of Galera, Ecuador, in international waters.[1] MPA captured video and images of the semi-submersible vessel underway.






United States Coast Guard Cutter ("USCGC") VIGILANT was nearby and diverted to intercept the semi-submersible vessel. USCGC VIGILANT also launched a small boat with an embarked boarding team to interdict the semi-submersible vessel and order the three defendants (including Defendant CORTES SINISTERRA) to stop their vessel. As the Coast Guard small boat approached the semi-submersible vessel, the Coast Guard

---

[1] 18 U.S.C. § 2285(h) states "semi-submersible vessel" has the meaning given in 46 U.S.C. § 70502. 46 U.S.C. § 70502(f) explains "[t]he term 'semi-submersible vessel' means any watercraft constructed or adapted to be capable of operating with most of its hull and bulk under the surface of the water, including both manned and unmanned watercraft." As demonstrated by the pictures above and below, this vessel meets the definition of a semi-submersible.

Boarding Officer ordered the defendants to stop the vessel and show their hands. The defendants did not comply. Two of the defendants attempted to hide in the pilothouse; one remained by the engines. Due to noncompliance, two Coast Guard boarding team members boarded the vessel, opened and entered the hatch, and removed the two defendants from the internal pilothouse. This involved a degree of risk.



The semi-submersible vessel was not flying a physical flag, had no registration number or other markings on the hull, and no registration documents. No one claimed to be the master of the vessel, and no one made a claim of nationality for the vessel. The defendants did not answer any questions. Based on this, the Coast Guard treated the vessel as without nationality ("TWON") and conducted a full law enforcement boarding. During this boarding, Boarding Officers located two scuttling valves which had not been activated and packages consistent with illicit narcotics. Overall, 165 bales of cocaine weighing approximately 3,000 kilograms were recovered from the semi-submersible vessel.



Ultimately, Agents discovered Defendant left Colombia in the semi-submersible vessel to transport and deliver the cocaine. PSR ¶ 7. Defendants FLORES BOHORQUEZ and MEDRANA each identified Defendant CORTES SINISTERRA as the captain of the vessel, describing Defendant's daily use of a satellite phone to communicate with smugglers using texts. PSR ¶ 8-9, 16. Defendants FLORES BOHORQUEZ and MEDRANA indicated that they were promised substantial sums of money ($46,000 and $25,000, respectively) for their active participation in the voyage. PSR ¶ 10 15. Defendant MEDRANA believed the voyage would take 10 to 15 days. PSR ¶ 16. The bales of cocaine and additional supplies, including a satellite phone and three GPS devices, were found inside the semi-submersible vessel.

## B. Defendant's Statements

During the presentence interview Defendant adopted the factual basis portion of his plea agreement. He also said he committed the offense because he needed money.

## III. THE GUIDELINES

## A. Calculation

Under USSG § 2D1.1 (c)(1), the base offense level is 38. The United States is not recommending any enhancements or any reductions for role. There is a two-level upward adjustment for operation of a semi-submersible under USSG § 2D1.1 (b)(3), a three-level downward adjustment for acceptance of responsibility, and a four-level downward departure for combination of circumstances/appeal waiver under USSG § 5K2.0. Defendant has not met the requirements for Safety Valve under USSG § 2D1.1.(b)(18) and 5C1.2 because he has not met with the Government to discuss his involvement. Defendant is in Criminal History Category I per the PSR. The resulting guideline range is 135 to 168 months in custody. Pursuant to the plea agreement, the United States is recommending 120 months in custody – a substantial variance of 15 months.

## B. Government Recommendation

Several factors justify the Government's recommendation.

First, the actions of the Defendant. Defendant pled guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel and Operation of a Semi-Submersible vessel. In adopting the factual basis section of the plea agreement, the Defendant acknowledges that he committed the offenses knowingly and with the intent to evade detection. The evidence shows Defendant coordinated an at-sea voyage spanning hundreds of nautical miles to transport a vast quantity of cocaine valued at millions of dollars. Identified as the master or captain of the vessel by his co-defendants, Defendant was key in coordinating vessel movement, positioning, and replenishment. Transporting cocaine on the high seas takes considerable skill and experience. That skill promised a significant reward. For Defendant, the reward was monetary. PSR ¶ 24.

The sophistication of carrying out the offense similarly influences the Government's recommendation. Maritime drug smuggling is a complex undertaking – a venture for which Defendant's preparation, expertise, experience, and efforts were critical. Defendant acted as more than a mere drug courier which this district often encounters for sentencing in land-based drug smuggling ventures. Instead, maritime smuggling requires specialized skills, and men like Defendant are recruited because of their familiarity with the maritime environment and their surety in carrying out the job.

That Defendant used a semi-submersible vessel to carry illicit narcotics makes his involvement and motivation even more notable. Semi-submersible vessels, by their very nature, are designed for covert operations. Their design and coloring make them difficult to detect visually and by radar. They are not used for fishing, pleasure, ferrying passengers, or any other lawful purpose. Indeed, under 18 United States Code Section 2285 Congress explicitly made the mere operation of a semi-submersible vessel illegal, declaring "that operating or embarking in a submersible vessel or semi-submersible vessel without nationality and on an international voyage is a serious international problem, facilitates transnational crime, including drug trafficking, and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States." Drug Trafficking Vessel Interdiction Act of 2008, S. 3598, 110th Congress, § 101 (2008). Therefore, the

mere operation of this vessel, even if it had not been carrying approximately 3,000 kilograms of cocaine, is illegal.

With the rarity of semi-submersible vessels, it naturally follows that the successful operation of a semi-submersible vessel requires special skill. A semi-submersible vessel is unique even in comparison to the go-fast vessel or open hull panga style vessels typically seen in this District for use in maritime drug smuggling. Due to the semi-submersible's exceptional design and shape, with most of its hull and bulk under the surface of the water, navigating such a stealth-like vessel requires extraordinary reliance on navigational tools such as GPS, and confidence in maneuvering a vessel uniquely affected by both surface and underwater maritime conditions. With four outboard engines, the Defendant needed some understanding of engineering, refueling and repairs. Likewise, the combination of low freeboard, inability to ascertain radar contacts, and drastically reduced visibility require a trained pilot at the helm.

Additionally, navigating a semi-submersible vessel presents extraordinary innate risk in comparison to higher freeboard vessel types, such as open hulled pangas. Any change in sea conditions or weight can quickly cause the vessel to sink. The presence of scuttling valves which fill the vessel with water presents concerns for law enforcement boarding teams. When overloaded with heavy cargo, boarding team members entering the pilothouse to extract noncompliant Defendants, as was the case here, are at added risk of the vessel sinking.

Furthermore, as evidenced by the final interdiction location, approximately 100 nautical miles northwest of Ecuador, arriving here required Defendant to prepare to be away from home for an extended period of time, and to help navigate the vessel over a multi-day journey, without a safe or reliable means of rescue. This was a well-coordinated and planned expedition. Indeed, simply packing sufficient food, supplies, and parts for repair requires considerable knowledge and foresight. Over this journey, Defendant was required to deal with all the difficulties that navigation on the high seas brings, including weather, sea state, and difficult communications. This requires expertise and experience

that cannot be performed by just anyone. Unlike a simple drug courier who may only be responsible for drugs for a few hours and a few miles during a border crossing, this journey required Defendant to be responsible for the cocaine for an extended period in both duration and geography. A prudent drug smuggler would not entrust 3,000 kgs of precious cargo to the unskilled mariner.



Though identified by co-defendants as the captain of the vessel, the United States is not arguing for a navigator enhancement in this case. Likewise, the United States does not believe an adjustment for role, either aggravating or mitigating, is appropriate either. The defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense." *United States v. Cantrell*, 433 F.3d 1269, 1282 (9th Cir. 2006). He has made no such showing. The defendants operated as a team, utilizing tremendous skill, training, and acumen as discussed. The three men were literally stuck in the same boat, and all were critical and equally culpable for its voyage. The Defendant is not less culpable than the average participant—let alone *substantially* less culpable. Defendant understood the scope of this crime: he was to transport a large quantity of cocaine from Colombia to Mexico. PSR ¶ 7, 16. He was involved in planning for and preparing for the criminal activity. As one of three men on this vessel in the middle of the high seas, he was in control of the vessel. Finally, Defendant stood to benefit from the criminal activity, expecting a financial reward. He participated extensively in the criminal activity, stood to

benefit from it, and exercised discretion in performing the acts to further the criminal enterprise. This weighs against a role reduction.

The sheer quantity of cocaine found on board Defendant's semi-submersible vessel also influences the Government's recommendation. Defendant was responsible for trafficking an astounding amount of cocaine. To put this sum into perspective, this was over 600 times the amount of cocaine required for a ten-year mandatory minimum, and almost seven times the amount of cocaine that establishes the highest possible base offense level in the sentencing guidelines. While Defendant may claim he did not intend to come to the United States, his role in transporting the cocaine in the semi-submersible vessel was critical to the success of the trafficking venture and it was foreseeable that the cocaine was bound for the United States. During a maritime drug smuggling venture the value of the drugs, and potential profit, increases exponentially. Had this cocaine successfully made it to the United States it would have been worth tens of millions of dollars. As it stood, the Defendants were collectively promised tens of thousands of dollars in payment if successful. There is no doubt that if this highly dangerous drug successfully made it to the United States, it could have led to extensive harm.

Finally, given the need to generally deter others, it is essential that the sentence reflects the seriousness of this offense and the potential harm from trafficking cocaine on the high seas. Only a significant sentence will discourage future potential traffickers from engaging in similar crimes. The incentive to make relatively large sums of money for trafficking drugs must be combated with the deterrence of significant sentences for engaging in this criminal activity. There is a need to impose a sentence that adequately deters others from engaging in this criminal activity for the hopes of financial reward.

The substantial variance already recommended by the United States appropriately accounts for any variances based on the history and characteristics of the defendant. Defendant was entrusted to smuggle approximately 3,000 kg of cocaine while operating far from land with autonomy on a semi-submersible vessel. Defendant's sentence should reflect his extensive culpability.

1   **C.    Conclusion**

2          After considering the 3553(a) factors, the United States believes the recommended

3   sentence of 120 months in custody, followed by 5 years' supervised release, no fine, and a

4   $200 special assessment is sufficient but not greater than necessary.

5

6

7   DATED: September 2, 2022                          Respectfully submitted,

8                                                     RANDY S. GROSSMAN
                                                      United States Attorney
9

10                                                    */s/ Allison B. Murray*
                                                      Allison B. Murray
11                                                    Special Assistant U.S. Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28